UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL RAMOS ORTIZ,<br><br>        Petitioner,<br><br>     v.<br><br>WARDEN OF THE CENTRAL VALLEY<br>ANNEX, *et al*.,<br><br>        Respondents. | Case No.  1:26-cv-03628   (VC)<br><br>**ORDER GRANTING PETITION FOR<br>WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 2 |

This habeas action concerns the detention of Petitioner Angel Ramos Ortiz, a noncitizen who has lived in the United States for nearly two years. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. *See* ECF Nos. 1, 2. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion for temporary restraining order as moot.

## I.      BACKGROUND

Petitioner is a citizen of Mexico who entered the United States through the San Ysidiro, California Port of Entry on or about December 8, 2024. Dkt. 13-3 at 3. At the port, he was "issued and served a Form-I-862, Notice to Appear," placed into removal proceedings under 8 U.S.C. § 1229a, and released into the interior of the United States. *Id*.; Dkt. 13 at 1 ("Respondents acknowledged that Petition [sic] entered the United States illegally in 2024 and

was released from immigration custody for his removal proceedings"). Following his release, Petitioner contends he has maintained a clean criminal record, has abided by all the conditions of his release, and has applied for asylum. Dkt. 1 at 6; Dkt. 12 at 2. He lived and worked in California with his wife and children prior to being detained. Dkt. 1 at 6.

Despite no apparent change in circumstances since Petitioner's initial release, he was re-detained by ICE on November 23, 2025—over six months ago—while attending a scheduled immigration appointment in Fresno, California. Dkt. 13-1 at 2. On March 10, 2026, Petitioner appeared before the Adelanto Immigration Court, was found to be inadmissible under 8 U.S.C. § 1182, and ordered removed to Guatemala pursuant to INA § 208(a)(2)(A), Dkt. 13-4—a provision of the INA which provides that asylum applications may be denied "if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country … in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1158(a)(2)(A). Petitioner timely filed an appeal of the order to the BIA on April 6, 2026. Dkt. 13-5.

## II.    DISCUSSION

Petitioner filed this habeas petition and a motion for temporary restraining order on May 11, 2026, arguing that his prolonged detention without a finding that he is a flight risk or danger to the community violates due process. *See* Dkt. 1. After retaining counsel, Petitioner filed a supplemental memorandum in support of his petition, arguing that application 8 U.S.C. § 1158(a)(2)(A) ordering removal to Guatemala was unlawful, and does not "foreclose meaningful judicial review of Petitioner's detention and threatened removal." Dkt. 12 at 4. Respondents argue that Petitioner may be detained "under the authority of 8 U.S.C. § 1225(b) because he is an applicant for admission seeking admission," and that habeas relief pursuant to the unlawful application of 8 U.S.C. § 1158(a)(2)(A) would be improper. Dkt. 13 at 2–3.

### A.    Detention Authority

It is well established that the "post-removal" detention period under 8 U.S.C. § 1231(a)

does not begin until a non-citizen's appeal of his removal order is resolved by the BIA. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021) (an order of removal becomes "administratively final" within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i) when "the agency's review proceedings" are complete). As Petitioner appealed his removal order to the BIA on April 6, 2026, his removal proceedings are still pending, and he may not be detained under § 1231(a). *See Palencia v. Warden of Golden State Annex Det. Facility*, No. 1:26-CV-1058 DJC CSK, 2026 WL 818580, at *2 (E.D. Cal. Mar. 25, pending2026) ("Petitioner is not detained pursuant to 8 U.S.C. § 1231(a) because his removal order is not administratively final where his appeal to the BIA is pending."). Indeed, Respondents concede as much in their opposition. Dkt. 13 at 2 ("Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"). Thus, Petitioner remains detained under the authority of 8 U.S.C. § 1225(b).").

Respondents, however, maintain that detention is still proper under 8 U.S.C. § 1225(a). *Id*. This argument has been widely rejected across this circuit, and indeed, throughout the United States. *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *4-11 (6th Cir. May 11, 2026); *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *4–9 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026); *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1304 (W.D. Wash. Sept. 30, 2025); *Menjivar Sanchez v. Wofford,* No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3–7 (E.D. Cal. Oct. 17, 2025) (collecting cases); *Shoimov v. Chestnut*, No. 1:25-CV-1603 CSK, 2026 WL 35624, at *4 (E.D. Cal. Jan. 6, 2026); *Singh v. Bondi et al.*, No. 1:26-CV-0396 DC CSK P, 2026 WL 469169, at *3 (E.D. Cal. Feb. 19, 2026); *Sharan S. v. Chestnut*, No. 1:25-cv-01427-KESSKO (HC), 2025 WL 3167826, at *5 (E.D.Cal. Nov. 12, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *3 (N.D. Cal. Aug. 21, 2025). Applying Section 1225 to non-citizens like Petitioner who are re-detained within the interior of the United States "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render

a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1112 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Given Respondents' failure to articulate a lawful basis for Petitioner's detention, the Court next turns to his due process claim.

### B.    Due Process

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at \*2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.    Liberty Interest

Though neither party has specified exactly what Petitioner's custody status was between the time of his release on December 8, 2024 to the date of his detention on November 23, 2025, both parties have indicated that he was *released* by ICE. *See* Dkt. 13-1 at 2 (noting that upon release in December 2024, Petitioner was enrolled in an "Alternative to Detention" program). Given that Petitioner was released into the interior of the United States—and the fact that Respondents have only argued that § 1225(a) controls detention—the court need not determine precisely what statute applies here because Petitioner has a protected liberty interest in his continued release. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at \*2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at \*3 (E.D. Cal. Nov. 21, 2025) (same).

4

### 2.   *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for almost two years. In the intervening years he has developed ties in his community working and supporting his family. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan*, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-

detained. In fact, Petitioner maintains that he has a clean criminal record—a fact Respondents do not dispute. Dkt. 1 at 6. Further, he was arrested by ICE while attending a scheduled immigration appointment, a willingness to comply with immigration rules, rather than an indication of flight risk. Dkt. 13-1 at 2. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

### C.    Application of 8 U.S.C. § 1158(a)(2)(A)

Given that the Court finds that due process entitles Petitioner to complete relief—i.e., relief from custody—the Court need not address whether application of 8 U.S.C. § 1158(a)(2)(A) in Petitioner's removal proceedings was unlawful. As 8 U.S.C. § 1252 makes clear, an appeal to the applicable court of appeals is the "the sole and exclusive means for judicial review of an order of removal," and the Court's jurisdiction under 8 U.S.C. § 2241 extends to review of the lawfulness of detention. 8 U.S.C. 1252(a)(5); *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052–53 (9th Cir. 2005). Respondents have not argued here that Petitioner is subject to detention pursuant to his removal order. In fact, they concede that Petitioner's order is not final and is not the basis for his continued detention. Dkt. 13 at 2. As Petitioner's removal order has no bearing on his continued detention, whether the Immigrations Judge's order was lawful is a question to be decided by the BIA and potentially the Ninth Circuit.

**III.   CONCLUSION AND ORDER**

For the reasons stated above, the Petition is GRANTED.  IT IS HEREBY ORDERED that:

1.   Respondents immediately release Petitioner Angel Ramos Ortiz (A249-118-696) from their custody.

2.   Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.   If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.   The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: May 29, 2026

_____

VINCE CHHABRIA
United States District Judge